

# NUMBER 13-17-00123-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DITECH SERVICING, LLC,                                                    Appellant,

v.

JERRY PEREZ D/B/A LIGHTHOUSE
INVESTMENTS,                                                              Appellee.

### On appeal from the County Court at Law No. 4
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Rodriguez

This appeal concerns Ditech Servicing, LLC's attempt to foreclose on a house

owned by appellee Jerry Perez, d/b/a/ Lighthouse Investments.  By four issues, Ditech

argues that the trial court erred in entering judgment in favor of Perez and awarding him

attorney's fees. Ditech asserts that Perez's affirmative defenses to foreclosure—limitations and laches—were without merit. We reverse and remand.

## I.    BACKGROUND

Prior to the bench trial, the parties stipulated to the facts and to certain exhibits, from which we draw our recitation of the background facts. In their briefs, the parties make clear that the central issue in the case is the statute of limitations.

The property in question is a house located in Edinburg, Texas ("the Property"). On January 13, 2006, Sarah McMaster borrowed $99,621.00 from Bank of America[1] to purchase the Property. The loan was secured by a duly recorded deed of trust against the Property, which was granted by Sarah and her husband Albion P. McMaster.

Sarah McMaster defaulted on the note. Bank of America accelerated the debt and initiated foreclosure proceedings in January of 2008. Notice of a trustee's sale was recorded, and the foreclosure sale was scheduled for February 5, 2008. The sale did not occur, however, because the McMasters filed for bankruptcy protection on February 2, 2008. An automatic stay was in place until the bankruptcy case was closed on January 15, 2009. The McMasters again filed for bankruptcy protection in December of 2009, but Bank of America was granted relief from the stay and permission to proceed with foreclosure.

The parties' stipulation of facts also explained how Perez came into possession of the Property. Before Sarah purchased the Property in 2006, her husband Albion was

---

[1] The loan in this case was originated by Countrywide Home Loans Servicing, LP, which later changed its name to BAC Home Loans Servicing, LP and eventually merged with Bank of America, NA. For ease of reference, we refer to these predecessors as if included in the term "Bank of America."

subject to an unrecorded judgment debt.   In October 2006, the Property was sold to Mike Robledo at a sheriff's sale to satisfy Albion's judgment debt.   In March 2010, Robledo sold the Property to Perez.

In November of 2011, Bank of America initiated nonjudicial foreclosure proceedings and recorded notice of a foreclosure sale.   Bank of America sent notices of default and its intent to accelerate Sarah's debt on November 30, 2011.

In December 2011, Perez filed this suit alleging that Bank of America waived its right to foreclose and was barred by laches from foreclosing, and he sought a declaratory judgment to that effect.   Bank of America filed a counterclaim for judicial foreclosure. During the pendency of the case, the parties filed competing motions for summary judgment on Perez's defense of limitations, which were denied by the trial court.

In 2013, Bank of America assigned its rights under the deed of trust to Ditech.[2] Ditech filed a motion to substitute itself as the real party in interest, which the trial court granted.

The case was set for a jury trial on October 11, 2016.   On the morning of trial, Ditech submitted a "Trial Brief on the Statute of Limitations of a Judicial Foreclosure Action" in which Ditech argued, as a matter of law, that Perez's statute of limitations defense failed on its merits.   On October 12, 2016, the parties announced their agreement to try the case to the bench on stipulated facts and agreed exhibits, and the case was submitted for the court's decision without formal trial proceedings.

---

[2] At one point, Ditech was known as GreenTree Servicing, LLC.

The trial court rendered judgment in favor of Perez. The judgment stated that Ditech's lien and claim on the Property were barred by the statute of limitations and by laches. The judgment awarded Perez attorney's fees, costs, and interest. Finally, the judgment decreed that Ditech "take nothing on its Counterclaim" for foreclosure. The trial court entered findings and conclusions explaining the reasons for its judgment, which we discuss later.

Ditech filed this appeal.

## II. STANDARD OF REVIEW

We review a trial court's legal conclusions de novo, whereas factual determinations receive more deferential review based on the sufficiency of the evidence. *In re M.P.A.*, 364 S.W.3d 277, 289 (Tex. 2012) (orig. proceeding). Evidence is legally insufficient to support a disputed fact finding when (1) there is a complete absence of evidence of a vital fact, (2) rules of law or evidence bar us from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

The question of when a cause of action accrues is generally a question of law, not fact. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). We review the application of limitations to the undisputed facts as a question of law. *Chorman v. McCormick*, 172 S.W.3d 22, 24 n.3 (Tex. App.—Amarillo 2005, no pet.) (citing *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 397 (Tex. App.—Texarkana 1999, pet. denied)).

4

## III.    STATUTE OF LIMITATIONS

Within its first issue, Ditech challenges the merits of the trial court's ruling on the statute of limitations.    According to Ditech, the proper inquiry is whether Ditech filed its foreclosure suit *against Perez* within four years of accrual.    Ditech asserts that the suit's four-year limitation period accrued in 2008, and because Ditech's suit was filed in 2011, it satisfied the statute of limitations as a matter of law.

According to Ditech, the trial court instead erroneously believed that the proper inquiry was whether Ditech filed suit *against McMaster* to collect on the underlying note within four years.    The trial court found that the action on the note accrued in January 2008, but as of October 2014, Ditech had still not sued McMaster on the debt.    The court found that this nearly seven-year span exceeded the four-year limitation period for breach of contract actions, and any action on the note was therefore time-barred.[3]    The trial court further found that because any suit to collect on the underlying debt was now time-barred, any suit to enforce the associated lien must be time-barred as well.    As support, the trial court cited the Fifth Circuit's holding that, under Texas law, an action to foreclose on a debt's security is barred where the statute of limitations has run on the collection of the debt.    *Rabo Agrifinance Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 352 (5th Cir. 2009) (citing *McBryde v. Curry*, 914 S.W.2d 616, 619 (Tex. App.—Texarkana 1995, writ denied)).

---

[3] The trial court found that the statute of limitations was tolled due to the McMasters' bankruptcy proceeding, but even with the tolling, Ditech had not filed suit against McMaster within the time allowed: limitations accrued in January 2008; the suit should be tolled 594 days to account for the McMasters' bankruptcy suit; even with the tolling, Ditech had five years and 234 days from January 2008 to file suit against McMaster; because Ditech had not filed suit against McMaster as of October 2014—over six years after accrual—any action on the debt was nonetheless time-barred, even with the tolling.

On appeal, Ditech argues that the trial court's central premise—that even though Ditech filed its foreclosure suit within the period of limitations for foreclosure actions, Ditech's action was nonetheless barred because the company no longer had a right to collect from McMaster on the underlying debt—was flawed. Ditech argues that because judicial foreclosure is an *in rem* proceeding, and because the note and deed of trust are wholly separate obligations, Ditech was not required to sue its borrower in order to maintain the right to foreclose on the collateral.

## A.    Applicable Law

To a degree, a note and lien constitute separate obligations. *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi 2002, pet. denied); *see Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet. denied). "It is so well settled as not to be controverted" that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien. *Martins v. BAC Home Loans Servicing, LP*, 722 F.3d 249, 255 (5th Cir. 2013) (quoting *Carter v. Gray*, 125 Tex. 219, 221 (Tex. Comm'n App. 1935)). Moreover, it is a "well-settled rule of the common law that, in a suit to foreclose a mortgage, it is not necessary to make the debtor a party to the suit where he has parted with his interest in the property, unless a personal judgment is sought against him." *Sewell v. Spitzer*, 234 S.W. 1083, 1085 (Tex. Comm'n App. 1921). "The plaintiff in such suit may proceed against the purchaser of the property alone, establish his debt, and

subject the property to the payment thereof." *Id.* The note and deed of trust thus offer "distinct remedies on separate obligations." *Martins*, 722 F.3d at 255.[4]

Actions to enforce those separate obligations are governed by different statutes of limitations. *Aguero*, 70 S.W.3d at 374. Under the Texas Civil Practice and Remedies Code, the period of limitations for foreclosure on real property is four years after the action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) (West, Westlaw through 2017 1st C.S.). Under the Texas Business and Commerce Code, an action to enforce the obligation to pay an accelerated note must be commenced within six years after the accelerated due date. TEX. BUS. & COM. CODE ANN. § 3.118(a) (West, Westlaw through 2017 1st C.S.).

However, while a note and a lien are separable in many ways, in other ways they are linked. *See Univ. Sav. & Loan Ass'n v. Sec. Lumber Co.*, 423 S.W.2d 287, 292 (Tex. 1967) ("[T]he liens are incidents of and inseparable from the debt."). For one, the same set of actions—accelerating the note—triggers accrual for both foreclosure and an action to enforce the note. *See Holy Cross*, 44 S.W.3d at 566.

For another, a "lien is part and parcel of the underlying claim, the former existing only because of the latter." *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). "Generally speaking, a specific debt (an obligation to

---

[4] Suits on these separate obligations are classified differently as well. A suit to enforce a note is an action *in personam*. *See Hewett v. Thomas*, 37 Tex. 520, 520 (1873). By contrast, it is well established that a suit to foreclose a mortgage is *quasi in rem*. *McCorkle v. Hamilton*, 150 S.W.2d 439, 442 (Tex. Civ. App.—Fort Worth 1941, writ ref'd); *Edinburg Irr. Co. v. Paschen*, 235 S.W. 1088, 1090 (Tex. Comm'n App. 1922). A *quasi in rem* proceeding has been described as an action "between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein." 1 McDonald & Carlson Tex. Civ. Prac. § 4:8 (2d ed.) (internal quotations omitted); *In re Bank of Am., NA*, No. 01-02-00867-CV, 2003 WL 22310800, at *4 n.6 (Tex. App.—Houston [1st Dist.] Oct. 9, 2003, no pet.) (mem. op. on reh'g).

pay money) is necessary to support a lien; the lien is affixed to land as security for some obligation to pay money." *Id.* at 411 n.10 (quoting *Calvert v. Hull*, 475 S.W.2d 907, 911 (Tex. 1972)); *see First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993) (providing that satisfaction of the underlying debt discharges the lien).

Because a debt is necessary to support a lien, an action to foreclose on a debt's security is thus barred where the statute of limitations has run on the collection of a debt. *Rabo Agrifinance*, 583 F.3d at 352 (citing *McBryde*, 914 S.W.2d at 619). "The debt being barred, the lien dependent thereon is unenforceable and was properly decreed to be null and void." *Godde v. Wood*, 509 S.W.2d 435, 444 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.); *see Holford v. Patterson*, 257 S.W. 213, 214 (Tex. 1923) (similar as to a mortgage lien); *Hubble v. Lone Star Contracting Corp.,* 883 S.W.2d 379, 381 (Tex. App.—Fort Worth 1994, writ denied) (similar as to a materialman's lien); *In re Herman*, 211 Fed. Appx. 320, 322 (5th Cir. 2006) (per curiam) (similar as to an equitable lien).

As a result, a foreclosure suit must be filed before the earlier of: (1) the expiration of the four-year statute of limitations for foreclosure, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a), or (2) the expiration of the six-year statute of limitations for suits to enforce the underlying promissory note. *See* TEX. BUS. & COM. CODE ANN. § 3.118(a); *Rabo Agrifinance*, 583 F.3d at 352.[5] If the foreclosure suit is filed before the earlier of

---

[5] One Texas court has held that a lender may satisfy the statute of limitations in two ways: by filing "a suit to foreclose on a deed of trust" within the limitations period or by accomplishing a "sale of property pursuant to a power of sale in a mortgage or deed of trust" within the limitations period. *See Metcalf v. Wilmington Sav. Fund Soc'y, FSB*, No. 03-16-00795-CV, 2017 WL 1228886, at *3 (Tex. App.—Austin Mar. 29, 2017, pet. denied) (mem. op.). Because Ditech never accomplished a sale of Perez's property, we confine our discussion solely to the filing of a petition for foreclosure.

these dates—usually the four-year statute for foreclosure—both statutes of limitations are satisfied as to the foreclosure suit.

**B.    Application**

The trial court found that the undisputed facts established that Ditech's foreclosure action was time-barred.   Specifically, the trial court found that Bank of America effectively accelerated the debt on January 15, 2008.   Neither party disputes that this marked the accrual of actions for foreclosure and for enforcement of the note.   *See Holy Cross*, 44 S.W.3d at 566.

Under the four-year statute of limitations applicable to foreclosure actions, Ditech was required to file its foreclosure suit not later than January 15, 2012.   TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a).   Ditech's counterclaim for foreclosure was filed in December of 2011, which satisfies this statute of limitations.

Under the six-year statute of limitations applicable to suits to enforce a note, Ditech would ordinarily be required to file its foreclosure suit not later than January 15, 2014. *See* TEX. BUS. & COM. CODE ANN. § 3.118(a); *Rabo Agrifinance*, 583 F.3d at 352. However, the trial court further found that the statute of limitations for a suit to enforce the note should be tolled 594 days due to the McMasters' bankruptcy proceeding, and neither party challenges this finding.   *See* 11 U.S.C.A. § 108(c) (West, Westlaw through P.L.115-173).   Thus, when 594 days of tolling are added to the six-year statute of limitations applicable to suits to enforce a note, Ditech was obligated to file its foreclosure suit not later than September 1, 2015.   *See* TEX. BUS. & COM. CODE ANN. § 3.118(a). Ditech therefore satisfied this statute of limitations, because its counterclaim for foreclosure was filed in December of 2011.

In sum, because the petition for foreclosure was filed before the earlier of these two deadlines, we hold as a matter of law that Ditech satisfied both applicable statutes of limitations. *See* CIV. PRAC. & REM. CODE ANN. § 16.035(a); TEX. BUS. & COM. CODE ANN. § 3.118(a); *Rabo Agrifinance*, 583 F.3d at 352.[6]

We sustain Ditech's first issue.

## IV. LACHES

By its second issue, Ditech challenges the trial court's ruling that foreclosure was barred by laches.

### A. Applicable Law

Laches is an equitable remedy that prevents a plaintiff from asserting a claim due to a lapse of time. *Brewer v. Nationsbank of Tex., NA*, 28 S.W.3d 801, 804 (Tex. App.— Corpus Christi 2000, no pet.). The party asserting laches has the burden of proving it. *Id.* To invoke the equitable doctrine of laches, the moving party ordinarily must show (1) an unreasonable delay by the opposing party in asserting its legal or equitable rights and (2) the moving party's good faith and detrimental change in position because of the delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (per curiam) (orig. proceeding); *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998). "Generally in the absence of some element of estoppel or such extraordinary circumstances as would render inequitable the enforcement of petitioners' right after a delay, laches will not bar a suit short of the period set forth in the limitation statute." *Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 74 (Tex. 2006); *see Brewer*, 28 S.W.3d at 805–06 (cataloging cases

---

[6] Also within its first issue, Ditech argues that Perez waived any limitations defense. Because we have ruled in Ditech's favor, we need not address this argument.

finding no "extraordinary circumstances" where suit was filed within the period of limitations).

## B.    Application

Perez's sole argument in support of his claim of laches is that Ditech and its predecessors filed suit after the expiration of limitations. However, we have already determined that Ditech's foreclosure counterclaim was filed within the period of limitations.

Perez's laches defense therefore rests on his ability to show some element of estoppel or extraordinary circumstances as would render it inequitable to enforce Ditech's right to foreclose. *See Hallco*, 221 S.W.3d at 74. Perez does not advance any basis for such a conclusion, and we find none in the record. Because evidence of this vital fact is wholly absent from the record, the evidence is legally insufficient to support the trial court's ruling on laches. *See City of Keller*, 168 S.W.3d at 810.

We sustain Ditech's second issue.

## V.    ATTORNEY'S FEES

By its third issue, Ditech contends that the trial court erred in awarding attorney's fees under the Uniform Declaratory Judgments Act (DJA).

The Uniform Declaratory Judgment Act permits a trial court to "award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West, Westlaw through 2017 1st C.S.); *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). The DJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be

equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). A party need not prevail to be awarded attorney's fees under the DJA. *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). Instead, a trial court may, in equity, decline to award attorney's fees to either party or award attorney's fees to a non-prevailing party. *See Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 313 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g); *see also Arcturus Corp. v. Espada Operating, LLC*, No. 13-13-00713-CV, 2016 WL 4272381, at *12 (Tex. App.—Corpus Christi Aug. 11, 2016, no pet.) (mem. op.).

The basis of the trial court's declaratory judgment was the statute of limitations and laches. We have determined that neither of these grounds is supportable; Ditech satisfied the statute of limitations as a matter of law, and there is insufficient evidence to support the trial court's ruling on laches.

When an appellate court reverses a declaratory judgment, it may reverse an attorney's fee award, but it is not required to do so. *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015) (op. on denial of reh'g). Because our disposition on appeal "substantially affects the trial court's judgment," reversal of the attorney's fees award is warranted so that on remand the trial court can address what costs and attorney's fees, if any, should be awarded. *Bank of New York Mellon v. Soniavou Books, LLC*, 403 S.W.3d 900, 907 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "In light of our disposition of this case, the trial court may wish to reconsider its ruling on attorney's fees." *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex. App.—Dallas 2001, pet.

denied). Accordingly, we will reverse the award of attorney's fees under the DJA and remand the issue for the trial court's further consideration.

We sustain Ditech's third issue.

## VI. FORECLOSURE

By its fourth issue, Ditech asserts that the trial court erred in rendering a take-nothing verdict on its foreclosure claim. Ditech asks this Court to render judgment that Ditech is entitled to foreclose.

Because of its rulings with regard to laches and the statute of limitations, the trial court never reached the merits of Ditech's counterclaim for foreclosure. Accordingly, the proper disposition is to give the finder of fact the opportunity to review the facts, assess the value and credibility of the exhibits, and render judgment accordingly. *See BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 405 (Tex. App.—Houston [14th Dist.] 2000) (remanding for a new trial on a counterclaim which went unaddressed due to contrary findings on other issues), *supplemented on denial of reh'g*, 66 S.W.3d 304 (Tex. App.—Houston [14th Dist.] 2000, no pet.). As such, we do not reach Ditech's fourth issue.

## VII. CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
31st day of August, 2018.

13